ready for our next case. Robinson versus Rimex 19 hyphen 80 37. Uh, Mr Countryman is Collins Council. You may proceed. Yes, Your Honor. My name is Vance Countryman. I represent the appellants in this matter. I have two points I wish to address. The claim against Kurt Trucking is based on general negligence principle and does not require control. And second, there are material issues of fact regarding control over the rotating of the rim that, uh, occurred at the time when Mr Robinson was killed and that those issues material fact includes some judgment. At the time that this incident took place, Kurt Trucking had called Mr Robinson to tighten lug nuts on his, uh, the rims on their truck. What we know is that the rim had already failed. The edge of the rim had worn away. The, uh, rim itself was compromised and could not hold the pressure. And this all happened while in the control of Kurt Trucking. Mr Robinson was not involved in any aspect of the repairs or maintenance to the crane before he was called to tighten lug nuts. This case has, excuse me, this court has made it clear in Ruiz versus Pacific Power that case was adopted by Wyoming Supreme Court, Jones versus Chevron U. S. A. And Merrick versus Hoare that a principal or an owner may be held liable for its direct negligence for the negligence it was involved in. In this case, from the very onset, it has been the plaintiff's position that the condition of the rim and the manner in which the crane was presented was completely in the control of Kurt Trucking and that their maintenance repairs and inspections were negligent. At no time did we assert that the lug nuts. Uh, that literally was simply the point in which, uh, these factors all came together. It was a split rib, correct? Yes, Your Honor. And he was going to take the tire off and reset it to be clear, Your Honor. And, and he didn't deflate it. That's true. When he pulled it off, it popped. That's true, Your Honor. Um, you know, in a crane tire, it's about £200, isn't it? But, Your Honor, I don't know the answer to that. I think it's I don't know the answer to that. It's something that he knew about, and he was going to do it, and he had been hired to do it. Your Honor, it was not that he didn't know that there was a problem with that tire. That's why he was there. He did not know and could not know that the rim had failed. And this is a really important point. The court just asked me if he was asked to remove the tire from the rim, and he was not. He was never employed to remove the tire from the rim. In order to make the repairs effective, you've got to take the tire off the rim, and you have to deflate it before you do it. Respectfully, that's not correct. He was asked to rotate the inside rim to the outside and the outside rim to the inside. He was never asked ever to turn the tire around, just swap them one for the other. Literally, they will mount both ways. And so he was asked to take the outside rim off, move it to the inside on the same hub, take the inside tire out, move it to the outside, and then retighten the lug nuts. And the objective was to, by rotating the rims to the inside and the outside, to get the tire off the rim. So he was asked to rotate the rims to the outside, and he was asked to move the material to tighten on so that they could get the crane to the site. The other important point, Your Honor, is that the issue that that you have raised is a comparative fault issue. Wyoming Statute 1-1-109 requires all actors to go on the verdict form, but it's a jury question. It is not a summary judgment question. And in this case, the rim failed before Mr. Robinson ever came to the site. The lack of maintenance and repair had caused the rim to fail. Literally, the edge was worn away to the point it would not contain the air pressure. And one of the primary points is that even under OSHA standards, under these circumstances, Mr. Robinson would not have been required to deflate the rim or deflate the tire. He was not hired to, nor was he actively changing the tire on the rim at the point that it exploded. In fact, most of the split rim cases that litigation arises from is when a tire technician is reinflating the tire and the rim, the split rim comes off of the base rim and explodes. And so they retain it in the cage so that they can stand back, add air to the tire to see that it inflates. That is not what was happening here. The rim was still mounted on the truck, the tire was still mounted on the rim, and he was simply removing the lug nuts so that he could rotate the rims at the request of Kirk Trucking's manager. How do you rotate just a rim? Well, the rim and tire are one unit. You take the lug nuts off, you remove the spacer band, you take the inside rim and tire off, you then take the tire and rim that was on the outside, turn it around, slide it on the hub, then put the spacer band back on the hub, then take the inside tire, turn it around, and tighten it up, or slide it on the hub. Then you put date lockers on and then the lug nuts, and the lug nuts and everything pulls everything together now. Let me ask a question about your most straightforward claim, I guess, just that the defendant was negligent in maintaining this assembly, and therefore, at least there was comparative fault. They were partly at fault. But I thought the rule was that if you hire someone to come in and repair something, you don't owe any duty to them, and they're responsible for taking all the safety precautions to make sure there's not a problem. If I hire someone to do some work at my home, I may be negligent in maintaining something, but you expect the worker to protect himself against things like that. Is that not the rule? Your Honor... Do I have a duty to the someone repairing something at my house? Yes, Your Honor. And the duty is addressed specifically in the Jones v. Chevron case. They give an example of a contractor who's hired to come and work on, to install power lines. And in that example, the court notes that the contractor isn't responsible for replacing the power poles. The poles themselves are still within the control of the owner. And the owner is responsible for his direct negligence and his reasonableness in maintaining those poles in a reasonable way. In this situation, Mr. Robinson didn't provide the rim. Mr. Robinson didn't maintain the rim. And the condition of the rim was exactly in its damaged condition at the point when the rim exploded. And that condition arose from the maintenance and care provided by Kirk Trucking. Well, Chevron was in a totally different situation. It was, they control the electric power. And in this case, Kirk Trucking controlled the truck entirely and completely and under all times when the rim split and failed. And the most important part of what it is in this discussion is the fact that um, the rim literally failed due to a lack of maintenance. Even Kerr's employees acknowledged that the rim failed due to a lack of maintenance and that it had worn to the point that the side of the rim had worn away and would not contain the pressure of the tire. I'm sorry, Council. Correct me if I'm wrong, but wasn't Jones versus Chevron, wasn't it a question of whether there was a duty to a third party, not the independent contractor himself? Your Honor, in Jones, the employee that was injured was employed by an independent contractor. He brought suit against Chevron for its failure to provide him with, or they were negligent in the manner in which they oversaw this. They were held liable because they did not shut off the power that was near him when he was painting. That's exactly what I'm trying to get at. There are three parties in the Jones versus Chevron situation, the employee, the independent contractor, and then the company. Why does that situation map onto a situation in which you've got the company, and why does the company owe a And that is a different situation than one where there is a third party there. At least, I don't see how the doctrine would necessarily map onto that situation that we have here, where there is a third party. The doctrine applies directly because it is the contractor's negligence before Mr. Robinson was ever brought to the site. The track was set. Mr. Robinson had no way to know of the condition of the rim. All of that information. The contractor is Mr. Robinson. Mr. Robinson is the independent contractor in that situation, and vis-a-vis the company curve. And so the question, I think, going back to Judge Hart's point is, why does the company owe him a duty? In the cases, it seems to be all the cases that you cited, and perhaps give me one if I'm wrong, were situations where you had exactly this Jones versus Chevron phenomenon. Company, independent contractor, does the company owe a duty to the third party? Your Honor, these three cases stand for the premise that each owner is responsible for their own negligence. They are the ones that maintained and repaired their crane. The independent contractor language and direct control is a red herring. Literally, they're the ones that determined how that crane was maintained and repaired for a number of years before this ever arose. Mr. Robinson contributed absolutely nothing to the circumstances that resulted in his death. That rim had already failed. Curve was already negligent in the manner in which they had maintained and repaired their crane. Well, negligence, to Judge Hart's earlier point, negligence, whether they are careless in the sense of they didn't do anything wrong, doesn't talk about the question of whether they had a duty vis-a-vis the person who was injured. I mean, that's an entirely different question. So whatever her did as it relates to the piece of equipment doesn't say that they had a duty to somebody they called in to do something on that equipment. Your Honor, I reserve the balance of my time. I think you should answer Judge Holmes's question. Let's change the facts just slightly. Let's assume that Mr. Robinson was in a car traveling eastbound and her truck was driving westbound, and the tire came off the truck, went across the medium, and collided into Mr. Robinson's car and killed him. The facts are exactly the same. You changed it. Those facts are dramatically different. Mr. Robinson, in your scenario, is not an independent contractor that was retained by Curve to do work. He's somebody on the street driving a car. How are those two things the same thing? They're identical, Your Honor, because all of the negligent care, all of that as a reasonable person arose out of the maintenance and repairs of the crane. The fact that Mr. Robinson was loosening lug nuts didn't modify the rim at all with regard to the failure of the rim. Mr. Robinson was as innocent as... Let me ask about that because something Judge Kelly asked made me wonder. If he had bled the air out of the tire so there was no pressure, not this extreme pressure in the tire, before switching the tires, that would have prevented the accident, wouldn't it? It would have. Why can't somebody hiring someone to take care of this expect the independent contractor to take the safety precautions? Your Honor, I want to answer your question, and the way that I do that is that Wyoming is a compare-default state. This is an issue of material fact, and comparing the negligence of Mr. Robinson with the negligence of Kurt Trucking is a question for the jury. That's a reasonable point, but it doesn't have a duty to the independent contractor to protect them. Don't we expect independent contractors to take the necessary steps to protect themselves? Each of those three cases make it clear that we do not. The Ruiz case, the Merritt case, and the Jones case, each and every one included in rule is the direct negligence of the defendant. Thank you, counsel. Thank you. Ms. Ellsbury. May it please the court, counsel. My name is Kara Ellsbury, and I represent the appellee Kurt Trucking, Incorporated. The sole issue raised on appeal is whether the district court properly held that Kurt Trucking owed no duty to Mr. Robinson, an independent contractor, and more particularly that Kurt Trucking retained no control over the manner or methods of Mr. Robinson's work. The answer to that question is yes. The record is clear that the district court's decision is well supported by the undisputed facts and Wyoming law. The overwhelming majority of cases decided by the Wyoming Supreme Court, the court has found no duty, and the district court's decision here is consistent with those cases. Now, before I turn to my prepared remarks, I'd like to discuss at least one of the questions raised by the court to Mr. Countryman, and particularly the question about the rule respecting employer-independent contractor liability. In the Jones case, and that's Jones versus Chevron USA, the Wyoming Supreme Court said an owner is not obligated to protect the employees of an independent contractor from the hazards which are incident to or part of the very work the contractor was hired to perform. Here, Mr. Robinson was hired to repair a wobbling wheel, and Mr. Countryman just disputed that an independent contractor to know the precautions to keep themselves safe. But in fact, Wyoming law does expect that. Again, in the Jones case, which is distinguishable, but sets out the policy reasons for the general rule, the Wyoming Supreme Court said that the owner should be permitted to assume that the worker or his superiors are possessed of sufficient skill to recognize the degree of danger involved and to adjust their methods of work accordingly. And that's because an owner hires the independent contractor because of their expertise and the type of work involved. And that's what occurred here. I'd like to turn now to Appellant Cora Robinson's reply brief. On appeal, it's evident that Mrs. Robinson's theory of the case has changed. At the summary judgment level, Appellant Cora Robinson argued that her exercised control when it told Mr. Robinson to switch the inner and outer wheels. Now, however, in her reply brief, Mrs. Robinson argues that her exercised control much earlier, allegedly when it failed to maintain the wheel. Her arguments are an attempt to impose general negligence principles in the specific context of employer-independent contractor liability. And those principles don't apply. Rather, and unless the very narrow exceptions apply, the law is clear that employers owe no duties to an independent contractor or its employees. Let me, let's pursue the exception. There's an exception when the employer exercises control. What does that mean? The Wyoming Supreme Court says it's, it's not as much control as necessary as would be necessary to make the independent contractor an employee. You don't have to have control over the manner and methods, whatever the standard is in Wyoming for it. It's less than that. It is control. Why isn't telling someone you switch the tires? Why isn't that enough? I don't, I don't have any way to grasp whether it's enough or not without some more guidance. And I couldn't find that. Well, first I think that we turn to the, the, the Jones case itself, 718 P. 2nd, 890. And at page 896, there the court says, if the independent contractor controls how to do the work, there is not sufficient control to impose liability. But the court went on to say, on the other hand, if the employer retains the right to direct the manner of the independent contractor's performance, they've exercised sufficient control. Okay. So, so, so it's not enough to tell them how to do it, but it is enough to tell them the manner in which they do it. That's too subtle for me. Well, your honor, I think that restatement second of torts, which has been adopted by Wyoming section 414 provides us that additional guidance. So it draws the distinction pursuant to that section. An employer can tell an independent contractor to start or stop work. It can make suggestions or recommendations, which need not necessarily be followed, or it can prescribe alterations or deviations, but what the employer can't do, it can't exercise control over the manner or the methods of work. So how you actually perform the work. So why isn't saying you failed to issue here with what you've done so far? So why don't, well, if it were just a suggestion, there's no problem. But the allegation I think is that the owner then said, do it this way. Reduce the vibration by switching the wheels. What that, where does that fit in the section 414 framework? It's not, it's not obvious to me. Foremost, you know, the record doesn't support that the current trucking employee directed Mr. Robinson to do that. The undisputed evidence is that an employee asked, can you do this? And he said, yes, but let's assume, let's assume that her said, I want you to do this here. There still isn't sufficient control because it was at most an alteration or deviation. For example, if from the very outset, her trucking had called Mr. Robinson and said, Hey, we want you to come to this, this truck stop, and we want you to switch the inner and outer wheels. Her trucking wouldn't have been liable in that scenario because it didn't tell Mr. Robinson how to do that. Rather Mr. Robinson and he alone controlled one, what and certain other equipment. Two, Mr. Robinson and he alone controlled the process that he followed. First tightening the studs, similar to lug nuts, then loosening and tightening them several times, then taking the lock that's used to hold the wheel on the hub off and comparing it to that from another wheel. And then finally trying the lock from the other wheel on the outer wheel. And most importantly, third, Mr. Robinson and he alone controlled the manner and methods by which he switched the wheels, including choosing not to deflate the tire, to stand directly in front of it and the manner and order in which he took off those studs. He exercised control over the manner of his work, the method of it, the operative detail. And Kerr allowed him that control. Kerr did not retain that control. And one of the cases that Appellant, Appellants, excuse me, analogized to is the Merit Energy case. And there's an important point about both the Jones and the Merit cases. Those are outlier cases. And those two cases, the Wyoming Supreme Court found a duty. But those facts are dramatically different from those here. This case is like the dozens of other cases in which the Wyoming Supreme Court has found no duty. And importantly, in the Merit case, and because it's relied upon so heavily by Appellants, I want to take a few minutes to distinguish it. In that case, the court found a duty, found that the employer had retained control where Merit controlled the pressure of its well, the equipment used to control it. Merit actually approved the equipment procured by the independent contract. Merit had the authority to kill the and chose not to do so. It had expertise in the management of well pressure. And it told the employer, the independent contractor, what to do, how to specifically fix the issue. Not, you know, not prescribed an alteration or deviation, but here's how you do it. So this case is very distinguishable from that. And one of the factors that I want to highlight is here, Kerr Trucking did not have expertise in servicing multi-piece wheels. That is the precise reason that Kerr Trucking called Mr. Robinson, because he was the expert that knew how to do it, that should know how to fix the wobbling wheel, that should know what safety precautions to take to keep himself safe. Kerr Trucking didn't have that expertise, unlike in the Merit case. Go ahead. Rather, this case is more analogous to a case that this court decided, and I'm probably going to say the name of the case wrong. It's, I pronounce it, Hyde versus Midstate Consultants Incorporated, and that's 394 F3rd 873. And in that case, the plaintiff was working in the trench and was injured when a large chunk of frozen dirt fell onto him. There, the employer had told the injured plaintiff where to dig the trench the pipe was going to be laid. The employer had to determine that he hadn't properly or adequately marked the pipe. And the employer told him, go down in there and mark it with scare tape. And there, this court affirmed summary judgment in favor of the employer. And the court said, for a liability to arise, the owner must go beyond making general suggestions or recommendations, as by instructing the employees what to do, how and when to do it, and what equipment to use. Where those facts aren't present here. Kerr Trucking didn't tell Mr. Robinson what equipment. He didn't tell him how to go about switching the inner and outer wheels, what steps to follow. And there's specific steps, as we now all know. Why don't you address Jones v. Chevron? You said that's also an outlier. How do you distinguish it? Well, foremost, Jones is a premises liability case. Here, we're not talking premises liability. Now, Jones is still relevant for with respect to the general rule and the two exceptions there. In Jones, and there's some interesting highlights from Jones. There, the court gave an exception that Mr. Countryman touched briefly upon. But he only mentioned part of the exception. There, the court says that, yeah, suppose you hire an independent contractor to repair the hardware on a power. The owner of the premises has an obligation to ensure the power pole is safe. But on the other hand, if the contractor is hired to either replace the defective poles or install new ones, then the power company has no duty to the contractor's employees to protect them from dangerous poles, as long as the contractor controls the installation process. Well, here, Mr. Robinson was hired to work on the outer wheel. That was the specific hazard. Now, the scenario could possibly be different if, for example, while he was working on this wheel, the boom from the crane fell on him. There, plaintiffs could plausibly argue that her trucking had a duty to provide a safe crane truck. But that's not the facts here. He was hired to work on the wobbling wheel, and that was a hazard that's injured. And so that part of Jones is instructive in this case, Your Honor. Turning back to my argument, Your Honor, I think I've covered most of it. There may be some things I missed, but the law is really, it's clear in Wyoming. The exceptions are clear. The policy reasons are clear. And here, the facts are undisputed. The court didn't control the equipment. It didn't control the matter, the method, the process. And accordingly, there's no liability. That's the result that a Wyoming court would reach. It's consistent with the vast majority of cases in Wyoming. What's your response to the spoilation argument that's at play here? Well, Your Honor. We couldn't hear you. Spoilation argument? Spoilation? Thank you. Foremost, Appellant Cori Robinson did not argue below that any inference to which she was allegedly entitled as a result of Kerr Trucking's alleged spoliation allowed her claim to survive summary judgment. And this court said in Mid-South Ironworkers Welfare Plan v. Harmon at 645 Federal Appendix 661, page 664, and I'll quote, that a federal appellate court does not consider an issue not passed upon below. Here, Mrs. Robinson didn't raise that argument. Further, on appeal, she cites no of unaccompanied by some effort at developed argumentation are deemed late. And that's from the Mid-South case as well. So here, the court shouldn't consider that argument now. But even if the court were to consider it, which our position is the court shouldn't, Kerr's alleged spoliation of evidence has no bearing on whether Kerr Trucking owed the deceived a duty. The condition of the over the aspect of Mr. Robinson's work that caused his injury over how to do that work, the method and manner. So it's really not, the spoliation really isn't relevant either. And of course, it wasn't raised below, Your Honor. Thank you. Thank you, counsel. Case is submitted. Counselor excused.